**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 19-20078 (JJT) |
| | ) | | |
| LORETA KASH, | ) | CHAPTER | 13 |
|    Debtor. | ) | | |
| | ) | RE: ECF Nos. | 63, 69, 84, 88, 92 |

**RULING GRANTING THE TRUSTEE'S**
**MOTION TO DISMISS FOR BAD FAITH FILING**
**AND DENYING CONFIRMATION OF THE DEBTOR'S PLAN**

These interrelated matters are before the Court on the Debtor's Third Amended Plan (ECF No. 63, the "Plan"), the Chapter 13 Trustee's Objection thereto (ECF No. 69), and the Trustee's Motion to Dismiss Case for Bad Faith Filing (ECF No. 84, "Motion to Dismiss"). In support of her claims, the Trustee alleges that the debtor, Loreta Kash ("Debtor"), is not making an honest effort to repay her creditors, as evidenced by, *inter alia*, the financing of a $65,000 pool approximately 4 months prior to filing for bankruptcy, the exclusion of bonus income in her Means Test calculation, and monthly mortgage payments of $5,545.58 on a property with no equity, all while proposing a monthly Plan payment of $250.00 and a 13% dividend to unsecured creditors.[1]

The hearing on these matters proceeded on essentially uncontested facts supported by the Debtor's own filings, 38 stipulated trial exhibits (ECF No. 87), the truncated testimony of the Debtor, and arguments of the parties. It is clear from the Court's examination that the Motion to Dismiss turns on the parties' distinctly different perceptions of these facts. After full

---

[1] The Debtor's Plan proposes payments of $250.00 a month for 23 months, then increases payments to $900.00 a month for 37 months once various 401K loans are paid off. The Third Amended Plan proposes to pay approximately $39,050 to unsecured creditors, whose claims total an estimated $127,000.

consideration of the record in this case and the arguments of counsel, the Court concludes that there is sufficient cause to deny confirmation of the Debtor's Plan and to dismiss this case on the basis of bad faith.

At the heart of obtaining relief through a Chapter 13 filing is the prosecution of the Debtor's bankruptcy case and the filing of a plan in good faith. *See* 11 U.S.C. § 1325(a)(3). In determining whether a debtor has advanced a plan in good faith, courts must review the totality of the circumstances. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013). "The totality of the circumstances should take into consideration whether the debtor has abused the provision, purpose or spirit of the Bankruptcy Code and whether the filing is fundamentally fair to creditors." *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009) (citation and internal quotation marks omitted); *see also In re Wrobel*, 525 B.R. 211, 217–18 (Bankr. W.D.N.Y. 2015) ("[I]t has been [the court's] view that 'good faith' in a Chapter 13 case simply means treating creditors in a 'fundamentally fair' manner, and [the court] has said that if a Chapter 13 Debtor seeks to extract too many benefits from the Chapter 13 process, his or her plan might be rejected as lacking 'good faith.'"). As part of the Court's assessment of the facts and circumstances related thereto is a review of the sacrifices made by the Debtor, the pursuit of reasonable financial rigor, and efforts made to address the claims of creditors. *See In re Amos*, 452 B.R. 886, 894 (Bankr. D. N.J. 2011) ("The architecture of chapter 13 is essentially a bargain, allowing debtors to keep property only by agreeing to make some meaningful payment to creditors.").

Here, it is clear that the Debtor and her husband have lived at the extreme end of their financial means pre-petition and now seek to maintain a fairly commensurate lifestyle that their present income cannot support. Pre-petition, the Debtor and her husband paid (and continue to pay) $5,545.58 monthly toward a $734,110.28 mortgage on a property currently valued at

$612,667; spent $998 monthly on dining out; paid (and continue to pay) $665.12 monthly on a 2012 Porsche Cayenne loan; paid a golf club membership of $527 per month; and installed a $65,000 pool just months before the Debtor's bankruptcy filing. Post-petition, the Debtor has advanced a Plan that essentially and markedly redounds to their own benefit, continues their living on the edge of their means, and diminishes any treatment of creditors rather than balances their respective interests.

And while the Debtor contends that the golf membership has since been canceled and that the significant monthly dining expense has been cut back, there notably has been no material change in the approach to the mortgage on a home they cannot afford. Critically, the Plan supports the continued financing on the Porsche and the $659 monthly payment toward the pool loan, while at the same time permitting the Debtor to retain any income tax refunds and bonus income received during the its term in addition to allowing the Debtor to make sizeable contributions to a pension plan ($826.04/month) and sizeable payments toward a 401K loan ($948.32/month until July 2022). It proposed this with an initial offer of a 2.57% dividend to unsecured creditors,[2] which now has been belatedly increased to 13% due to the objection of the Trustee. The Court is not convinced that there is a "bargain" here or that the Debtor has proposed the "fundamentally fair" treatment of her creditors, even with the modest increase in the dividend to unsecured creditors. To the contrary, it is clear that the Debtor is attempting to maintain a luxurious lifestyle to the detriment of her unsecured creditors.[3] *See In re Sutliff*, 79 B.R. 151, 157

---

[2] *See* ECF No. 44, Debtor's First Amended Plan.

[3] The Court's decision is further informed by the authorities advanced by the Trustee. *See In re Broder*, 607 B.R. 774, 779 (Bankr. D. Me. 2019) ("[W]hen payments on luxury items are disproportionate in size to plan payments and general unsecured creditors are receiving minimal distributions, a finding of bad faith is possible, if not likely."); *In re Klaven*, 2012 WL 2930865, at *1 (Bankr. D. Mass. 2012) ("The bargain between the debtors and creditors as currently reflected in the debtors' chapter 13 plan tilts so dramatically in the debtors' favor as to cause the plan to fail the test of good faith.").

(Bankr. N.D.N.Y. 1987) ("Debtors should not be allowed to continue in the lifestyle that drove them to file bankruptcy and at the expense of the creditors.").

The Debtor asserts that her good faith is demonstrated by her "cautiously increasing her proposed payments with each plan, including the proposal of 'steps' which will see increased payments as various secured debtors or retirement loans are paid off." ECF No. 88, Objection to Motion to Dismiss. According to the Debtor's own filings and calculations (*see* ECF No. 88-2), the Debtor and her non-filing spouse will have an additional estimated $2,000/month once the 401K loans are paid off, yet the Plan proposes an increase in payments of only $650. What's more, there is no "step up" accounted for upon the expiration of the non-filing spouse's credit card bills, the expiration of the Porsche loan, or the receipt of any bonus income.

Accordingly, the Debtor has not demonstrated that she has pared her living expenses to the basic necessities, nor has she demonstrated, by a preponderance of the evidence, that she proposed the Plan in good faith. The degree to which her creditors would be made whole and the amount of disposable income allocated to the Plan do not evidence the Debtor's sincerity or proper motivations in seeking Chapter 13 relief. On this basis, the Debtor's case is dismissed, without prejudice, as a bad faith filing. Accordingly, the Trustee's Motion to Dismiss is hereby GRANTED and confirmation of the Debtor's Third Amended Plan is hereby DENIED.

IT IS SO ORDERED at Hartford, Connecticut this 16th day of November 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut